IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20522
_____


JAMES M MCCRELESS,

                              Plaintiff-Appellant,

        v.

MOORE BUSINESS FORMS INC,

                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-94-3594)
_____
                    March 26, 1997
Before KING and PARKER, Circuit Judges, and ROSENTHAL,[*] District
Judge.

PER CURIAM:[**]

     James M. McCreless appeals the lower court's grant of

summary judgment against him in his age discrimination suit

against Moore Business Forms, Inc.  Finding no error, we affirm.

                        **I.  BACKGROUND**

_____

        [*]  District Judge of the Southern District of Texas, sitting
by designation.

        [**]  Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

In the light most favorable to McCreless, the facts are as follows.

In 1956, the plaintiff James M. McCreless began working for Moore Business Forms, Inc. ("Moore") as a clerk at the Denton plant. McCreless was eventually promoted to a supervisory position in 1979, in which he remained until the plant closed in 1987. McCreless then transferred to the Bryan plant and took the job of group leader. Seniority at the Bryan plant was determined by the length of service at the Bryan plant. Thus, as a transferee, McCreless had less seniority than employees who were already at the plant.

In March of 1988, when he was over age fifty, McCreless was again promoted to a supervisory position. At the time of the promotion, there were five other supervisors at the plant, including Adolpho Rios, and all were over forty except Rios, who turned forty within six months of McCreless's promotion. McCreless worked in this position until October 12, 1993, when he was transferred to an hourly position as part of an ongoing, company-wide reduction in force ("RIF"). McCreless claims that the plant manager told him the reason for the demotion was that Rios, a younger supervisor with more department experience, was going to replace him.

McCreless also asserts that in September of 1993, approximately one month before the transfer, management personnel encouraged him to take an early retirement option. McCreless

2

refused, claiming he did not want to retire and could not afford it. McCreless asserts that management personnel then began pressuring and harassing him about taking early retirement, culminating in the "demotion" in October.

In June of 1994, McCreless filed an EEOC charge, alleging that the transfer was because of his age.[1] About a month later, Moore informed plant employees that the Bryan plant would be closing. McCreless, and everyone else at the Bryan plant, was eventually laid off.

In October of 1994, McCreless filed this suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, alleging that the transfer was because of his age.[2] Moore moved for summary judgment, and the lower court granted the motion. McCreless timely appealed. McCreless claims on appeal that the grant of summary judgment was improper because he did not have adequate opportunity for discovery and that there are genuine issues of material fact that preclude summary judgment.

---

[1] McCreless also claims that the transfer denied him the opportunity to interview for supervisory positions at other plants because only "current supervisors" were eligible to interview. He claims that the transfer "gave Moore a pretextual reason not to interview him for subsequent available supervisory positions." However, this claim hinges on the transfer being discriminatory and thus will be subsumed by the general discussion.

[2] McCreless also asserted a retaliation claim, but he does not brief the retaliation issue on appeal. We need not consider issues or arguments not raised in the appellant's brief. *Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1124 (5th Cir. 1988).

3

## II.  STANDARD OF REVIEW

We review the granting of summary judgment de novo, applying the same criteria used by the lower court in the first instance. *Texas Medical Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 156 (5th Cir. 1996).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In reviewing a summary judgment, we resolve all actual factual controversies in favor of the nonmoving party.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  However, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Furthermore, "[a] mere scintilla of evidence is insufficient to present a question for the jury." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).

## III.  THE TIMING OF THE GRANT OF SUMMARY JUDGMENT

McCreless complains that the lower court granted summary judgment before he had adequate opportunity for discovery.[3]

---

[3]  Moore argues that McCreless has "waived" this argument because he did not mention it in the introduction of his brief in the statement of the issues.  However, McCreless asserts the

4

McCreless filed this suit in October of 1994.  Nearly one year later, on September 29, 1995, Moore filed a motion for summary judgment.  During the intervening year, the parties submitted a joint discovery statement (which they modified several times, including an extension of the final discovery deadline) and made their initial disclosures, Moore designated its experts, McCreless noticed several depositions by written questions, and Moore deposed McCreless.  On the same day Moore filed its summary judgment motion, McCreless sent his first set of interrogatories and request for production.

In response to Moore's motion for summary judgment, McCreless requested an extra week to respond, and the lower court granted that motion.  McCreless filed his response on October 26, 1995, and he argued that he had not conducted adequate discovery and that since the discovery deadline was several months away, the court should not yet rule on the motion.  A few days later, McCreless noticed the oral deposition of Ken Baker, Moore's human resources director, but that deposition never occurred.  On April 16, 1996, Moore filed a supplemental motion, urging the court to rule on its previously filed summary judgment motion.  Between the time of McCreless's response to the earlier summary judgment motion and Moore's supplemental motion, apparently no discovery

argument several other places in his brief.  Moore cites no authority for the proposition that to preserve an issue, the issue must be argued in a particular portion of the brief.

5

occurred.  On April 29, 1996, McCreless responded to Moore's supplemental motion, arguing that it had inadequate time for discovery and noting the discovery expected by the discovery deadline.  McCreless had scheduled Baker's deposition for May 15, 1996, the discovery deadline, and was due to receive responses to its second set of interrogatories and request for production the same day.  The lower court granted summary judgment on May 2, 1996, about two weeks before the discovery deadline.

McCreless complains that the lower court prematurely granted summary judgment because his further discovery requests "sought relevant information concerning similarly situated supervisors and employees" and that ruling on the summary judgment motion before the discovery date "effectively den[ied] McCreless the opportunity to establish certain evidentiary issues that were crucial to his case."  However, McCreless did not use the proper mechanism for requesting more discovery before a summary judgment ruling.  Rule 56(f) of the Federal Rules of Civil Procedures provides:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

As the Supreme Court stated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986), "[a]ny potential problems with such premature

[summary judgment] motions can be adequately dealt with under Rule 56(f)." *See also Banco de Credito Industrial v. Tesoreria General*, 990 F.2d 827, 838 n.20 (5th Cir. 1993) (citing *Celotex* for the proposition that "Rule 56(f) is [the] appropriate mechanism to deal with premature summary judgment motion[s]"), *cert. denied*, 510 U.S. 1071 (1994). Other circuits have held that the nonmovant cannot complain about the timing of granting summary judgment in relation to discovery except through the procedure provided in Rule 56(f). *See Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1389 (Fed. Cir. 1989) ("A party may not simply assert that discovery is necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit."); *THI-Hawaii, Inc. v. First Commerce Fin. Corp.*, 627 F.2d 991, 994 (9th Cir. 1980) ("Where the opposing party has not had sufficient time to complete discovery . . . , application may be made under Rule 56(f) for a continuance . . . . If the opposing party fails to take advantage of Rule 56(f), summary judgment may be entered, if otherwise appropriate."). These authorities indicate that McCreless should not be able to complain about the timing of the grant of summary judgment because he did not take advantage of the Rule 56(f) procedure. We are not inclined to elevate form over substance, but this case is a matter of substance. The case illustrates the

7

appropriateness of the Rule 56(f) affidavit requirement because, according to the court papers filed, McCreless never explained to the lower court (or to this court, for that matter) specifically what he hoped to find out from further discovery and how this expected evidence would defeat the motion for summary judgment. *See Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) ("It is established law of the circuit that a plaintiff's entitlement to discovery prior to a ruling on a summary judgment motion may be cut off when . . . the record indicates that further discovery will not likely produce facts necessary to defeat the motion.").

Even if McCreless were not required to use the Rule 56(f) procedure, his argument is without merit because he has not made a specific showing of what further discovery would reveal. In his brief, he states merely that he expected "relevant information concerning similarly situated supervisors and employees" and that he wanted the opportunity "to establish certain evidentiary issues that were crucial to his case." McCreless's assertion that he would obtain "relevant" and "crucial" information, without more explanation, is essentially a request for a fishing expedition, to which he is not entitled. *See Exxon Corp. v. Crosby-Mississippi Resources, Ltd.*, 40 F.3d 1474, 1487 (5th Cir. 1995) (affirming the district court's denial of an extension of discovery before granting summary judgment

8

because the request "was merely a request . . . to conduct a fishing expedition"); *Paul Kadair, Inc. v. Sony Corp. of Am.*, 694 F.2d 1017, 1032 (5th Cir. 1983) (concluding that the nonmovant was not entitled "to go fishing with the hope of fortuitously discovering some unknown and unsuspected evidence" in order to delay ruling on a motion for summary judgment). In sum, McCreless did not place before the lower court adequate information showing specific reasons why he delayed discovery and that evidence he expected to obtain would defeat the motion for summary judgment. Thus, the lower court did not err in granting summary judgment before McCreless had an opportunity to conduct further discovery.

### IV. THE MERITS OF THE GRANT OF SUMMARY JUDGMENT

#### A.

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). One method of proof under the ADEA is the indirect evidence, burden-shifting approach. First, the plaintiff has the burden to establish a prima facie case of age discrimination. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996)(en banc). If the plaintiff presents sufficient evidence to create a prima facie case, a presumption of age discrimination

9

arises.  *Id.*  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision.  *Id.* at 992-93.  If the employer meets this burden, the presumption created by the plaintiff's prima facie case is dissolved and the burden shifts back to the plaintiff to establish that the employer's proffered reason is merely a pretext for age discrimination.  *Id.* at 993.  To demonstrate this pretext, the plaintiff must show both that the employer's proffered reason was false and that age discrimination was the real reason for the employment action.  *Id.* at 994.  In the context of a summary judgment,

> a jury issue will be presented and a plaintiff can avoid summary judgment . . . if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which the plaintiff complains.  The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.

*Id.*

### B.

To present a prima facie case takes "'only . . . a very minimal showing.'"  *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 639 (5th Cir. 1985)).  Thus, we

10

assume arguendo that McCreless has established a prima facie case and has raised a presumption of unlawful age discrimination.

The burden then shifts to Moore to articulate a legitimate, nondiscriminatory reason for transferring McCreless from a supervisor to an hourly employee.  Moore asserts, and the lower court determined, that Moore has articulated a legitimate, nondiscriminatory reason for demoting McCreless -- the RIF.  We agree.  Fifth Circuit law is very clear that a RIF is a legitimate, nondiscriminatory reason for taking an adverse employment action against an employee.  *See, e.g.*, *EEOC v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *Nichols*, 81 F.3d at 41.

Moore has produced considerable evidence supporting its contention that McCreless's transfer was part of an ongoing, company-wide RIF.  The lower court summarized this evidence succinctly:

> Here, there is ample evidence in the record that Moore was undergoing organizational changes at the time of McCreless' transfer from a supervisory to an hourly position on October 12, 1993.  In September 1993, Braun [president and CEO of Moore], gave a speech at the North American Quality Forum detailing changes that would be necessary for Moore to grow and compete in the global marketplace and to keep up with future technologies.  Three months later, on January 20, 1994, a letter from Braun referencing the speech was distributed to all employees of Moore.  The letter notified Moore employees that in some areas there would be plant closures and in others restructuring of operations to eliminate inefficiency and to improve productivity.  Additionally, Braun indicated in the letter that over the next two years, Moore expected to

11

reduce its worldwide workforce by approximately 3,000 employees. Furthermore, Braun stated that while normal attrition would accomplish some of the reduction, layoffs would be inevitable. Subsequently, on July 28, 1994, a letter was issued to all employees at Moore's Bryan plant informing them of the closure of the plant by October 10, 1994. Finally, in November 1994, the Bryan plant was closed.

McCreless does not challenge the fact that there was a reduction in the workforce or that demotions and discharges were occurring company-wide. Rather, McCreless acknowledged in his deposition that, prior to his demotion, everyone at the plant was fearful for their job due to a reduction in the number of employees and discussions of cutbacks. Specifically, McCreless acknowledged that he was concerned that the might lose his position as a supervisor. In addition, it is uncontested that the sixth supervisory position was eliminated.

This evidence satisfies Moore's burden to articulate a legitimate, nondiscriminatory reason for its employment action. McCreless complains that Moore did not tell him that his transfer was because of a RIF at the time of the transfer. That Moore may have given McCreless a different reason at the time may be relevant to McCreless's burden to show pretext, but it is irrelevant to whether Moore articulated a legitimate, nondiscriminatory reason to the court.

Because Moore met its burden to articulate a legitimate, nondiscriminatory reason for its action, the burden then shifts back to McCreless to raise a fact issue as to whether Moore's stated reason -- the RIF -- was merely a pretext for age discrimination. We conclude that McCreless has failed to raise a fact issue on pretext, and thus the lower court's grant of

12

summary judgment was proper.  McCreless put forth two types of evidence to support his pretext theory.  We will analyze each in turn.

First, McCreless argued that management personnel harassed him and repeatedly pressured him to take an early retirement package that Moore began offering about a month before McCreless was transferred.  McCreless asserts that as he refused to retire, the harassment continued, culminating in his demotion.  As one example of the harassment, McCreless testified in his deposition that Kenny Johns informed him of the retirement package and told McCreless that he should "consider taking it" and that if Johns were McCreless's circumstances, "he would take it."  McCreless testified that he considered this statement to be friendly advice at the time.  This comment is inadequate to prove pretext because it is merely a casual, facially-neutral remark.  *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993) (characterizing the statement "I hope when I get to your age, somebody does the same thing for me" as a "casual, facially-neutral remark" that is insufficient to raise a fact issue on pretext for age discrimination).  In his affidavit, McCreless states that Bill Crowley, the plant manager, "repeatedly pressured me to take early retirement" and that "[m]anagment continued to harass me regarding the early retirement" through "a series of events" culminating in the transfer to an hourly

position.  McCreless gives no specific details of this alleged "series" of instances of "harassment."  This evidence is insufficient to meet McCreless's burden to show pretext.  "In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429.

Second, McCreless claims in his affidavit that Crowley told him that he was being transferred to an hourly position because "another younger supervisor was going to replace me, who had more press department experience."  McCreless asserts that he was more qualified than the younger supervisor, Rios, based largely on the number of years each had spent supervising in general and in the specific department.  This evidence is inadequate to raise a fact issue as to pretext.  An attempt "to equate years served with superior qualifications" is "unpersuasive."  *Bodenheimer*, 5 F.3d at 959.  Furthermore, McCreless does not challenge that a RIF was ongoing and that one of the six supervisory positions was eliminated.  McCreless does not assert that eliminating this position was somehow improper, and thus someone had to take over his previous duties.  McCreless does not dispute that he had less seniority than the other supervisors, that Moore's policy was to use plant seniority in making employment decisions, and that Moore actually used its policy.  Thus, McCreless's evidence concerning the age or qualifications of the person assuming

14

McCreless's former duties is insufficient to raise a fact issue as to pretext in this context.

In sum, McCreless simply has not presented more than a scintilla of evidence that the transfer from a supervisory to an hourly position was not motivated by the RIF but instead was motivated by age.  Thus, McCreless has failed to meet his burden to raise a fact issue regarding pretext, and summary judgment in favor of Moore was proper.

## V.   CONCLUSION

For the foregoing reasons, we AFFIRM.